In the Matter of JUDITH LEIBOWITZ, Appellant, v STATE UNIVERSITY OF NEW YORK et al., Respondents. (And One Related Proceeding.)

Third Department, March 18, 1982

APPEARANCES OF COUNSEL

*Powers & Ghandhi* (*Margrethe R. Powers* of counsel), for appellant.

*Robert Abrams, Attorney-General* (*Peter H. Schiff* and *Shirley Adelson Siegel* of counsel), for respondents.

OPINION OF THE COURT

LEVINE, J.

Petitioner was appointed an assistant professor of comparative literature in 1972 at the State University of New York at Albany. Pursuant to the official policy adopted by

the board of trustees of the university (8 NYCRR 335.4 [b]) she had to be evaluated during the 1974-1975 academic year for continuing appointment, the effect of which would have been to grant her tenure. This entailed a multistage peer review process of her academic and teaching qualifications, beginning at the departmental level. The results of that process were unfavorable at each level of review, and in June, 1975, the then president of the State University at Albany determined not to recommend her for continuing appointment. The first of the two CPLR article 78 proceedings which are the subject of this appeal was initiated to review that determination.

During the tenure review proceedings, petitioner also registered objections with the university concerning the validity and fairness of the review process as applied in her case. Specifically, she charged that the chairman of her department was prejudiced against her, denied her an opportunity to appear and submit materials supportive of her candidacy, suppressed certain favorable data (particularly the high student rating of her teaching ability), and distorted a proper assessment of her scholarship by his selection of outside evaluators of her publications. In response to these criticisms, the president convened an *ad hoc* committee to investigate and report. The committee confirmed many of her accusations, and recommended reprimand and removal of the department chairman and a *de novo* review of petitioner's appointment. The president accepted the committee's recommendation concerning removal of the chairman, but declined to order complete *de novo* review, instead referring the matter back to the review process for reconsideration. Reconsideration took place in November, 1975, this time under a new department chairman and a new president of the university, and at each level of review the recommendation was again against granting tenure. It is the resulting denial of tenure after reconsideration that forms the basis of petitioner's second article 78 proceeding now before us.

Since our examination of the record supports Special Term's dismissal of both petitions on the merits, we need not pass upon the additional procedural grounds for dismissal, based upon mootness due to the subsequent aboli-

tion of petitioner's department, and upon collateral estoppel, arising out of final, adverse determinations of a related civil action against her former department chairman (see *Lebowitz v Szoverffy,* 80 AD2d 692, mot for lv to app den 53 NY2d 608), and of a proceeding she initiated against the university based upon alleged sex discrimination (see *Matter of State Univ. of N. Y. at Albany v State Human Rights Appeal Bd.,* 81 AD2d 688, affd 55 NY2d 896).

For reasons aptly expressed in *New York Inst. of Technology v State Div. of Human Rights* (40 NY2d 316, 323-324), courts are extremely reluctant to invade or sanction invasion of the province of academic authorities in making tenure decisions (see, also, *Matter of Pace Coll. v Commission on Human Rights of City of N. Y.,* 38 NY2d 28, 38; *Pauk v Board of Higher Educ. of City of N. Y.,* 62 AD2d 660, 665, affd 48 NY2d 930; *Legislative Conference of City Univ. of N. Y. v Board of Higher Educ. of City of N. Y.,* 38 AD2d 478, 480, affd 31 NY2d 926). Review is limited, even in the case of discharge of a tenured professor, to determining whether there was noncompliance with the internal rules of the institution and whether the decision was made arbitrarily, capriciously, or in bad faith (*Matter of Gray v Canisius Coll. of Buffalo,* 76 AD2d 30, 33-34).

At best, giving full credence to all of petitioner's objections, the infirmities in the original tenure review process would not mandate that she be granted tenure, but only that the university reconsider her appointment (*New York Inst. of Technology v State Div. of Human Rights, supra,* pp 325-326; *Legislative Conference of City Univ. of N. Y. v Board of Higher Educ. of City of N. Y., supra,* p 481). Since the referral of the matter to the *ad hoc* committee was not required by university policy and the committee's recommendation for *de novo* review was purely advisory, the president was not bound to comply with that recommendation (*Matter of Gray v Canisius Coll. of Buffalo, supra,* pp 33-35). This appeal thus turns on the validity of the decision denying petitioner tenure after reconsideration and the process by which it was reached. The record fails to support petitioner's objections to denial of tenure after that reconsideration. Petitioner received the full support of the newly appointed chairman of her department. She and the

chairman were afforded full opportunity to submit new materials in support of her application and to explain and rebut the prior unfavorable assessments of her credentials in her file. She has demonstrated nothing more than the possibility that the earlier critical evaluations of her work lacked objectivity and thus fails to support her contention that they should have been totally excluded from consideration. Since the *ad hoc* committee report dealt not with the merits of her appointment but mainly with the irregularities in the original review and the conduct of petitioner's former chairman, it was reasonable for the president to withhold the report during the reconsideration process. In short, petitioner has failed to demonstrate that denial of a tenured appointment was not the result of fair and complete reconsideration of her qualifications or that the determination, apparently based upon shortcomings in academic scholarship, was arbitrary or capricious.

Therefore, Special Term's dismissal of her petitions should be affirmed.

The judgments should be affirmed, without costs.

MAHONEY, P. J., SWEENEY, KANE and CASEY, JJ., concur.

Judgments affirmed, without costs.